# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

COREY RASCH,

                Plaintiff,

vs.

TYSON FRESH MEATS, INC. a/k/a
TYSON FOODS, INC.,

                Defendant.

No. C16-3006-LTS

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

_____

COREY RASCH,

                Plaintiff,

vs.

TYSON FRESH MEATS, INC. a/k/a
TYSON FOODS, INC., JACK
WALKER, TODD NEFF, and OTHER
UNNAMED DEFENDANTS,

                Defendants.

No. C16-3102-LTS

**ORDER ON MOTIONS TO DISMISS,
TO CONSOLIDATE AND FOR
SUMMARY JUDGMENT**

_____

## I.     INTRODUCTION

These two closely-related cases are before me on numerous motions.   In Case Number C16-3006, the first case filed by plaintiff Corey Rasch (Rasch), the parties have filed cross motions for summary judgment.   Doc. Nos. 36, 37.   Defendant Tyson Fresh Meats, Inc., a/k/a Tyson Foods, Inc. (Tyson), filed its motion for summary judgment on January 31, 2017.   Doc. No. 36.   Rasch filed a resistance (Doc. No. 41) and Tyson filed a reply (Doc. No. 46).   Rasch also filed a motion for partial summary

judgment on January 31, 2017. Doc. No. 37. Tyson filed a resistance (Doc. No. 40) and Rasch filed a reply (Doc. No. 47).

In Case Number C16-3102, the second case filed by Rasch, all of the defendants[1] filed a motion to dismiss and a motion to consolidate the two cases. Doc. No. 5. Rasch filed a resistance (C16-3102, Doc. No. 7), which seemingly only resisted the motion to dismiss but not the motion to consolidate. Defendants then filed a reply. C16-3102, Doc. No. 10. On the same day Tyson filed its motion for summary judgment in C16-3006, the defendants filed a similar motion in C16-3102. C16-3102, Doc. No. 15. Rasch filed a resistance (C16-3102, Doc. No. 16) and defendants filed a reply (C16-3102, Doc. No. 19).

Finally, on May 18, 2017, Rasch filed a renewed motion (Doc. No. 54) to remand C16-3006 on grounds the requirements for this court's diversity jurisdiction did not exist at the time the case was removed.

These motions are fully submitted and ready for decision.[2]

## II.    PROCEDURAL HISTORY

Because of the unique history of these cases, a detailed discussion of the procedural history is necessary.

***The First Case (C16-3006).*** Rasch filed the first case in the Iowa District Court for Kossuth County on December 24, 2015. Doc. No. 2-1. In his state court petition, he alleged in a single count that the then-named defendants – Tyson and Jack Walker –

---

[1] While Tyson is the sole defendant in the first case, in Case Number C16-3102 the defendants include Tyson along with Jack Walker, Todd Neff and "Other Unnamed Defendants." I will refer to all of the defendants other than Tyson as the "non-Tyson defendants."

[2] As will be discussed further below, I am consolidating these two cases. For the purposes of clarity in this order docket entries arising in the C16-3006 docket will simply be referred to as "Doc. No. #," while docket entries in C16-3102 will be referred to as "C16-3102, Doc. No. #."

had breached his contract and violated Iowa's Wage Payment Collection Act (Iowa Code chapter 91A). *Id*. at 4. On January 29, 2016, those defendants removed the case to federal court based on diversity jurisdiction. Doc. No. 2. On February 4, 2016, Rasch filed an amended complaint (Doc. No. 5) in which he dismissed Walker as a defendant and alleged that Tyson "discharged the plaintiff effective in October, 2014." Doc. No. 5 at 1. Tyson filed an answer on February 18, 2016. Doc. No. 8.

On February 5, 2016, Rasch filed a motion to remand the case to state court, arguing that the amount in controversy did not exceed $75,000. Doc. No. 6. On March 11, 2016, I denied that motion, noting that Rasch's original state court petition explicitly demanded more than $75,000 in damages. Doc. No. 11.

On July 30, 2016, Rasch attempted to file a second amended complaint that would have added new defendants, including Walker (again), Todd Neff and "other unnamed employees of Tyson." Doc. No. 18. Tyson moved to strike the second amended complaint, arguing that: (1) Rasch already used his one automatic amendment; (2) the deadline to file additional amendments had passed; (3) Rasch failed to comply with the local rules regarding conferring with opposing counsel; and (4) Rasch filed his second amended complaint without leave of the court. Doc. No. 20. Rasch resisted the motion to strike (Doc. No. 21) and filed a motion for leave to file an amended complaint (Doc. No. 22).

On August 30, 2016, Chief United States Magistrate Judge C.J. Williams granted Tyson's motion to strike. Doc. No. 23. Contemporaneously, Rasch filed a motion to file the second amended complaint out of time, which Tyson resisted. Doc. No. 22. In that motion, Rasch requested leave:

> to file a Second Amended Complaint "to add Count II and add additional parties to the claim . . . ." Doc. 22. Count II of the attached Second Amended Complaint alleges an unjust enrichment claim against Tyson, two named Tyson employees (Jack Walker and Todd Neff), and other unnamed

3

> Tyson employees whom plaintiff alleges financially benefited by receiving bonuses to which plaintiff alleges he was entitled. Doc. 22-1, at 3-6.

Doc. No. 25 at 1.   On October 11, 2016, Judge Williams granted the motion in part and denied it in part.   He found Tyson had failed to allege any prejudice from the out-of-time amendment.   However, Judge Williams further found that Rasch's claims against the non-Tyson defendants were futile.   Accordingly, Judge Williams allowed Rasch to add an unjust enrichment claim against Tyson but not the non-Tyson defendants.   Doc. No. 25 at 8-12.   Tyson remains the sole defendant in the first case.

On October 19, 2016, Rasch filed his revised second amended complaint (Doc. No. 26), consistent with Judge Williams' order.   On December 29, 2016, Tyson filed a motion to amend its answer to assert an affirmative defense (Doc. No. 29).   Judge Williams granted Tyson's motion as it was unresisted.   Doc. No. 34.   On February 6, 2017, Tyson filed a second motion to amend its answer (Doc. No. 38).   In that motion, Tyson requested that it be allowed to retract a prior admission as to the date Rasch alleged he was discharged.   *Id*.   Tyson stated that it realized the error after reviewing Rasch's motion for summary judgment.   *Id*.   Judge Williams granted that motion, finding that a true mistake had occurred regarding defendant's prior admission.   Doc. No. 43 at 7-11.   Specifically, Judge Williams stated:

> The Court finds plaintiff will not suffer prejudice as a result of allowing defendant to correct its mistaken admission.   It is clear from the depositions submitted by the parties in connection with this motion that the parties have staked out their positions regarding the dates of plaintiff's employment.   In other words, plaintiff cannot be surprised by this amendment as it is consistent with the position defendant has taken throughout the litigation.   Allowing this amendment will also not result in any delay in this litigation.

Doc. No. 43 at 10.

***The Second Case (C16-3102).*** Rasch filed his second case in the Iowa District Court for Kossuth County on August 30, 2016, more than a month before Judge Williams denied his motion to add the non-Tyson defendants to the first case. C16-3102, Doc. No. 2-1. In his second state court petition, which undisputedly arises out of the same set of facts, he cited his discharge and requested compensation based on a theory of unjust enrichment against Tyson, Walker, Neff and "other unnamed employees of [Tyson]." *Id*. at 5. Defendants removed the case to this court on October 4, 2016. C16-3102, Doc. No. 2. They then filed their motions to dismiss and to consolidate. C16-3102, Doc. No. 5.

## III. MOTION TO CONSOLDATE

The first issue I will address is the motion to consolidate (C16-3102, Doc. No. 5).

> According to Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed.R.Civ.P. 42. "[C]onsolidation pursuant to Rule 42(a) is permissive and vests a purely discretionary power in the district court … In exercising that discretion, district courts must weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated. *Pigott v. Sanibel Dev., LLC*, 2007 WL 3245019 (S.D. Ala. 2007).

*Matlock v. Smith*, No. C12-4086-DEO, 2013 WL 595892, at *4 (N.D. Iowa 2013); *see also Stillmunkes v. Givaudan Flavors Corp.*, No. C04-0085-MWB, 2008 WL 7662422, at *4 (N.D. Iowa 2008).

Defendants filed a combined motion to consolidate and motion to dismiss. In the context of the motion to consolidate, defendants argue:

because it makes no sense to have two separate lawsuits demanding the same payment and because the claims against the individual defendants remain without basis, Tyson hereby moves to consolidate the two cases . . .

C16-3102, Doc. No. 5-1 at 2. Rasch filed a resistance to the motion that is largely nonsensical. Because the defendants combined their motion to consolidate and motion to dismiss into one document, Rasch seemingly saw his resistance as an opportunity to argue why both cases should be remanded to state court. Specifically, he stated:

> The court should deny the motion to dismiss the claims against Todd Neff, Jack Walker, and other unnamed employees of Tyson Fresh Meats, Inc., and should consolidate the removed case caption above with Case No. 3:16-CV-03006. The court should, sua sponte remand the proceedings to the Iowa District Court for further proceedings under the claims of contract rights and unjust enrichment against Tyson Fresh Meats, Inc. a/k/a Tyson Foods, Inc., Jack Walker, Todd Neff, and Other Unnamed Defendants, employees of Tyson Fresh Meats, Inc., who profited from the distribution of the bonus that was earned by the plaintiff and apparently distributed to other unnamed employees of the defendant, Tyson Fresh Meats, Inc.

C16-3102, Doc. No. 7 at 6.

I agree with both parties that consolidation is appropriate. There is no doubt these cases arise from the same set of facts, as plaintiff previously tried to assert identical claims in C16-3006. Additionally, the parties have seemingly conducted discovery assuming that these cases will proceed together. Accordingly, there is no risk of prejudice. Finally, it is in the interest of both the parties' and the court's time to consolidate these cases.

Because the parties do not dispute that these cases should be consolidated, and because all factors weigh in favor of consolidation, I will grant the defendants' motion. These cases will be consolidated and will proceed together under docket number C16-3006. All issues in the consolidated case will be controlled by the scheduling orders set out in C16-3006. Additionally, I decline to sua sponte remand the case.

(*See* plaintiff's brief, C16-3102, Doc. No. 7-1 at 6, stating, "[o]nce consolidated, it is believed that the court lacks diversity and subject matter jurisdiction of claims less than $75,000 . . . and the consolidated case should be remanded to the Iowa District Court …")  Based on my review of the newly consolidated case, I reaffirm my prior finding (C16-3006, Doc. No. 11) that this court has subject matter jurisdiction as the amount in controversy at the time of removal exceeded $75,000 and the parties are actually diverse.[3]

## IV.    MOTION TO DISMISS

Next, I will consider defendants' motion to dismiss (C16-3102, Doc. No. 5). For a number of reasons, not the least of which are the numerous motions to amend that have been filed, no party in this case can be accused of excessive precision in that party's

---

[3] In his renewed motion to remand (Doc. No. 54), Rasch acknowledges that his initial state court complaint demanded $40,000 in actual damages and $40,000 in liquidated damages under Iowa's Wage Payment Collection Act, Iowa Code chapter 91A.  However, he contends that his attorney's recent research has revealed that liquidated damages are not recoverable under chapter 91A if the wages at issue are annual bonus payments.  Thus, Rasch's position is that even though his petition expressly demanded an amount in excess of $75,000, the demand was legally inaccurate, meaning the case was not, in fact, removable.  I reject Rasch's latest attempt to divest this court of jurisdiction.  Subject matter jurisdiction "is measured either at the time the action is commenced or . . . at the time of removal."  *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011).  "Neither the existence of a valid defense nor subsequent events reducing the amount in controversy divest the court of jurisdiction."  *Id.* at 822-23.  It is true that "subsequent revelations" can be used to show that the required amount was not, in fact, in controversy at the time of removal.  *Id.* at 823.  However, the court must "defer[ ] to the plaintiff's estimate with respect to the amount in controversy whenever the impossibility of recovery is not apparent from the face of the pleadings but emerges from adjudication of the merits."  *Id.*  Even assuming then-current Iowa case law did not support the liquidated damages Rasch demanded in his state court petition, that fact was not "apparent from the face of the pleadings."  Moreover, Rasch may have sought to make a good faith effort to change existing Iowa law.  His ability or inability to recover liquidated damages is an issue that "emerge[d] from adjudication of the merits."  Thus, based on the express allegations of Rasch's initial state court petition, this case was properly removed.  His renewed motion to remand will be denied.

filings.   Nowhere is this more clear than in the context of the motion to dismiss. Defendants' argument is that Rasch's unjust enrichment claim against the non-Tyson defendants in the second case is barred by the doctrine of res judicata because Judge Williams deemed that claim to be futile in the first case.   However, their argument is not particularly helpful.   For example, they state:

> Nor may Mr. Rasch now relitigate the same issue.   *Casciani v. Town of Webster*, 501 Fed. App'x 77, 79-80 (2d Cir. 2012) (holding that denial of leave to amend "constitute[d] a final judgment sufficient to preclude any claims contained in the proposed amended complaint" where the proposed amendment was denied as futile "because it 'could not have withstood[] a motion to dismiss for failure to state a claim"'); *United States ex rel. Pentagen Techs. Int'l Ltd. v. United States*, No. 00-cv-6167 (DAB), 2001 WL 770940, at *9 (S.D.N.Y. July 10, 2001) (applying claim preclusion based on the denial of leave to amend where the denial was based on the proposed amendment's futility); *Lozowski v. Benedicl*, No. 271626,2007 WL 39722I, at *2 (Mich. Ct. App. Feb. 6, 2007) ("the denial of a motion to amend a complaint on the ground that the amendment would be futile constitutes a determination that the claims are without merit and is entitled to res judicata impact").   Thus, claims against Neff and Walker should be rejected again and dismissed.

C16-3102, Doc. No. 5-1 at 3-4.

Rasch's resistance (C16-3102, Doc. No. 7) takes the confusion to another level. Instead of addressing any issue raised by the defendants, he argues about the difference in pleading standards between state and federal court.   For example, he states:

> [T]he standard for review of the pleadings in the above captioned cause with regards to claims against Jack Walker, Todd Neff, and other unnamed employees of Tyson Fresh Meats, Inc., are not subject to the Federal District Court rules for pleadings.   Such a dismiss [sic] would take from the plaintiff a due process right to litigate his unjust enrichment claims and the right to proceed with appropriate discovery.   It should be noted that the plaintiff filed a claim against other unnamed employees of the defendant, Tyson Fresh Meats, Inc.

C16-3102, Doc. No. 7-1 at 3. Defendants' reply addresses only the previously disposed of remand argument. C16-3102, Doc. No. 10.

Looking past the parties' filings, I turn to the appropriate standards for applying the doctrine of res judicata, which were recently set out by United States District Judge Linda Reade:

> Res judicata, or claim preclusion, "may be raised in a motion to dismiss when 'the identity of the two actions can be determined from the face of the petition itself.'" *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763 (8th Cir. 2012) (*quoting Potamitis v. Pittsburgh Plate Glass Co.*, 82 F.3d 472, 473 (8th Cir. 1936)). "[T]he phrase 'face of the complaint … include[s] public records and materials embraced by the complaint.'" *Id.* at 764 (*quoting Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978 (8th Cir. 2008)). "The law of the forum that rendered the first judgment controls the res judicata analysis." *Id.* (*quoting Laase v. Cty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011)). In the Eighth Circuit, whether res judicata bars a claim "in a diversity action is a question of substantive law controlled by state common law." *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997) (*quoting Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 617 (8th Cir. 1994)). "This rule applies when the original judgment is that of another federal court sitting in diversity." *Id.* (*quoting Follette v. Wal-Mart Stores, Inc.*, 41 F.3d 1234, 1237 (8th Cir. 1994)). Therefore, the court will apply Iowa law to the instant action to determine if res judicata bars JLI's claims.
>
> Under Iowa law, res judicata "applies only when a party has had a 'full and fair opportunity' to litigate in the first trial.'" *George v. D.W. Zinser Co.*, 762 N.W.2d 865, 868 (Iowa 2009) (*quoting Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006)). "A party asserting res judicata must establish the following: (1) 'the parties in the first and second action were the same'; (2) 'the claim in the second suit could have been fully and fairly adjudicated in the prior case'; and (3) 'there was a final judgment on the merits in the first action.'" *Id.* (*quoting Spiker*, 708 N.W.2d at 353) (formatting omitted). Res judicata bars further litigation "not only to matters actually determined in an earlier action but to all relevant matters that could have been determined." *Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011) (*quoting Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998)). "An adjudication in a prior action between the

9

same parties on the same claim is final as to all issues that could have been presented to the court for determination. Simply put, a party is not entitled to a 'second bite' simply by alleging a new theory of recovery for the same wrong." *Id*. at 836 (*quoting Bennett v. MC #619, Inc.*, 586 N.W.2d 512, 516-17 (Iowa 1998)).

*J. Lloyd Int'l, Inc. v. Super Wings Int'l, Ltd.*, No. 15-CV-74-LRR, 2016 WL 498428, at *5–6 (N.D. Iowa Feb. 8, 2016).

As set out above, Rasch clearly tried to assert the identical claim in the first case but Judge Williams rejected it. *See* Doc. No. 25, stating:

> Plaintiff asserts in his proposed unjust enrichment claim that Tyson, and named Tyson employees Jack Walker and Todd Neff, and "other unnamed employees of Tyson . . . financially benefited from the plaintiff's efforts in 2013 and 2014, without appropriate compensation to the plaintiff." Doc. 22-1, at ¶5. Plaintiff continues to assert in conclusory fashion that "plaintiff by his actions benefited the defendants who were knowingly enriched by plaintiff's efforts without full and reasonable compensation to the plaintiff." Doc. 22-1, at ¶13 Plaintiff further asserts that defendants "Jack Walker, Todd Neff, and other unnamed employees of Tyson . . . were knowingly enriched and financially benefited from plaintiff's efforts and from the purchases made by the plaintiff for Tyson . . . and further benefited from increased company profitability from not compensating plaintiff for his efforts . . . ." Doc. 22-1, ¶18. . . . [However,] plaintiff's mere conclusory assertions that these employees received a benefit is insufficient.

Doc. No. 25 at 7, 8, 9. Accordingly, Judge Williams granted the motion to add the unjust enrichment claim but denied Rasch's request to add the non-Tyson defendants. The question is now whether that decision was a ruling on the merits such that res judicata would apply.

For three reasons, I decline to find that Rasch's unjust enrichment claim against the non-Tyson defendants is barred by res judicata. First, as Judge Williams stated, there is a question as to whether or not a United States Magistrate Judge is empowered to dispose of claims or, instead, must submit a Report and Recommendation to the District

Judge. *See* Doc. No. 25 at 10-11. I agree with Judge Williams that he had the authority to reject the proposed amendment as futile. *See E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga. 2008) (internal citation omitted). However, this rebuts defendants' argument that Judge Williams' ruling was a ruling on the merits. *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006):

> The magistrate judge was authorized to rule on the motion for leave to file the Third Amended Complaint pursuant to 28 U.S.C. § 636(b)(1)(A), which provides that the district court may designate a magistrate judge to hear and determine, with certain exceptions not relevant here, any *nondispositive* pretrial matter.

(emphasis added) (internal citations omitted). In short, while a magistrate judge may deny proposed amendments on grounds of futility, a magistrate judge may not make dispositive rulings (absent, of course, the unanimous consent of the parties). Thus, it follows that Judge Williams' denial of Rasch's proposed amendment was not a final, dispositive ruling that must be given res judicata effect.

Second, there is an additional issue in that Rasch filed his second state court petition in August 2016, more than a month *before* Judge Williams ruled on the motion to amend. Neither party addressed this issue in its filings. Third, and perhaps most importantly, this issue is moot because, as I will discuss below, Rasch's unjust enrichment claim against the non-Tyson defendants is entirely without merit. Accordingly, I will deny the motion to dismiss on res judicata grounds and turn to the motions for summary judgment.

## V. RELEVANT FACTS

At the outset I note that Rasch's statement of material facts (Doc. No. 37-2) does not comply with the local rules, which require statement of facts to be numbered. *See* LR 56(a)(4). In its response, Tyson does an admirable job of breaking up and

numbering Rasch's stated facts to ease the court's understanding of Tyson's resistance. *See* Doc. No. 40-1.

The following facts are undisputed unless otherwise noted. Rasch began working for Tyson's predecessor company in 1993 and shortly thereafter became a "station hog buyer" for the company. In that job Rasch purchased hogs for Tyson (which is a meat processing business) and arranged for the hogs' delivery to the appropriate Tyson facility. Rasch was an at-will employee whose terms of employment were controlled by an unwritten contract that provided a salary and other incentives such as a vacation time and access to a bonus program.

Tyson terminated Rasch's employment on September 10, 2014.[4] The parties spend a good deal of time discussing why this occurred. Suffice to say that there is ample evidence in the record that in both 2012 and 2014, Rasch was disciplined for work-related lapses including improper use of company property and absenteeism. However, the particulars leading to Rasch's discharge are not relevant because Rasch does not assert that it was wrongful. For summary judgment purposes, I need only find that in 2012 Rasch was disciplined for malfeasance and that as a result of that discipline Rasch's bonus for that year was reduced.[5] *See* Doc. No. 36-6. Similar issues arose in 2014 and Rasch was discharged. Rasch admits he knew the company was unhappy with performance in 2014. Doc. No. 36-4 at 11.

---

[4] Rasch's complaint alleged he was discharged in October 2014. However, Rasch calculated that date based on his accrued vacation. Tyson initially admitted to the October 2014 termination date but Judge Williams allowed Tyson to amend its answer to deny that date. The documents submitted with the dueling motions make clear that Rasch was actually discharged on September 10, 2014, and received his final paycheck shortly thereafter. Rasch was then paid for his remaining vacation time, which had no bearing on his termination date.

[5] In his response to Tyson's statement of facts, Rasch objects to this fact. However, Rasch's argument is not based on anything in the record, while Tyson has produced a copy of the disciplinary letter from 2012.

Tyson's hog buyer bonus program provided year-end bonuses to hog buyers based on total hog sales. The program operated on Tyson's fiscal year, which begins October 1 and ends September 30. Unfortunately, Tyson's bonus program and the policies surrounding it have not been reduced to writing in a coherent manner. *See* Doc. No. 46-1 at 5 (Tyson admits employees were not given a written copy of the procedures). Rasch was paid a bonus of $23,518.00 in 2009, $59,951.00 in 2010, $57,589 in 2011, $18,346.00 in 2012, and $36,611.00 in 2013. Rasch was not paid a bonus following his discharge in 2014.

According to Tom Barber, a group controller at Tyson:

Tyson does not pay pro-rated bonuses to employees who quit or are discharged before bonuses are paid out except in the case of retirement (55 years of age plus years of service equals 70), death, or total disability. . . When a hog buyer quits or is discharged prior to bonus payout, Tyson does not retain any accrued profitability bonus money. All accrued profitability bonus money remains in the bonus pool and is allocated out to buyers based on various factors, including head count and performance.

Doc. No. 36-5 at 1-2; *see also* Doc. No. 36-9. In his deposition testimony, Rasch admitted that he did not negotiate a separate agreement with Tyson and that his bonuses were payable pursuant to the standard policy. Doc. No. 36-4 at 9. Rasch stated he agreed to the "deal" as it was offered to him. *Id*. Rasch also stated that he knew Tyson felt it could reduce his bonus for performance issues. *Id*. Rasch knew Tyson's policy that bonuses could be reduced for performance issues was a "take that or not have a job" situation. *Id*. at 11. Rasch also stated that when he requested a higher salary, he was told that his bonus was his "wage increase." Doc. No. 36-4 at 10. Most importantly, Rasch had no reason to believe that Tyson's policy was anything other than what Tom Barber described above. Doc. No. 36-4 at 12. Finally, Rasch did not know of any instance in which a hog buyer was paid a bonus in a manner different than described by Barber. Doc. No. 36-4 at 13.

Defendants Neff and Walker, who were not hog buyers, were not paid bonuses in the same manner as hog buyers. *See* Doc. Nos. 36-10, 36-11 at 3. While Rasch alleged that Neff and/or Walker may have profited because he was not paid a bonus, that belief was based on office "talk." Doc. No. 36-4 at 13.

Additional factual findings will be discussed as necessary below.[6]

## VI.    SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that

---

[6] Rasch spends significant time attempting to establish the amount of the bonus he should have received for the year 2014. However, the issues presented in the motions for summary judgment are whether he is entitled to a bonus and whether the defendants were unjustly enriched by his discharge. The precise amount of the bonus is not a relevant issue at this stage of the case.

only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998). Because the parties seek summary judgment on some of the same issues, I will consider all the parties' arguments as to each issue, keeping in mind the separate inferences that are to be drawn from each motion. *See Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 946 (S.D. Iowa 2005).

## VII. ANALYSIS

### A. The Breach of Contract and Chapter 91A Claim

#### 1. Tyson's Motion for Summary Judgment

The first motion for summary judgment I will address is Tyson's argument regarding Rasch's breach of contract and chapter 91A claim. Tyson states:

> Rasch brings a claim under Iowa Code Chapter 91A claiming he was not paid wages based on not getting a bonus after he was fired. In doing so, he appears to misunderstand Chapter 91A. Chapter 91A only requires payment of wages that are "due." Chapter 91A does not create rules for paying bonuses. Instead, an employer only must follow its own rules regarding such payments. *Phipps v. IASD Health Serv. Corp.*, 558 N.W.2d 198 (Iowa 1997); *Matzke v. Mary Greeley Med. Ctr.*, 2001 WL 355838, at *1 (Iowa Ct. App. Apr. 11, 2001); *Devore v. Dallas Grp. Of Am., Inc.*, No.98-2119, 1999 WL 1073850, at *2 (Iowa Ct. App. Nov. 23, 1999) (rejecting claim for bonus where there was no agreement to pay it); *Crookham v. Structural Contractors, Ltd.*, 466 N.W.2d 277 (Iowa Ct. App. 1990). As the Eighth Circuit Court of Appeals explained, "a bonus arrangement should be enforced according to its terms." *Lane v. Amoco*, l33 F.3d 676, 678 (8th Cir. 1998). "[A] bonus cannot be 'due' - as that term is used in section 914.3(1) - until it can be accurately estimated in accordance with the parties' agreement." *Johnson v. Dollar Gen.*, 880 F. Supp. 2d 967, 1002 (N.D. Iowa 2012), *affd*, 508 F. App'x 587 (8th Cir. 2013) (*quoting Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 586

(Iowa 2002)).   A "'bonus' was not 'due,' if [Rasch] failed to meet eligibility requirements for the payout."   *Id*. at 1003.

Here, there is no claim Tyson agreed to pay Rasch a bonus if it fired him.   Indeed, Rasch repeatedly and unequivocally testified he had no agreement at all for Tyson to pay him a bonus any differently than its standard practices.   Rasch Dep. at 49-50 (App. 8-9).   Nor is there any dispute Tyson's policy is only to pay bonuses after an employee departs if the employee left due to retirement, death or total disability . . .   None of these rules for eligibility applies here and Rasch acknowledges he did not qualify for a bonus under Tyson's policies.   Rasch Dep. at 59 (App. 11).   Simply put, because no bonus was due, Rasch's Chapter 91A claim must fail.

Even beyond the problem that Tyson never agreed to pay bonuses to those it fired, Rasch faces the problem that he knew Tyson reserved the right to reduce his bonus if he did not perform well.   Rasch Dep. at 48 (App. 8).   Rasch concedes he never was told his bonus could not be reduced to zero, if Tyson was sufficiently unhappy . . .   Even if Tyson's policy allowed bonuses other than for retirement, disability or death, there would be no basis to assess a value to any bonus Rasch might claim to be due when he knew Tyson reserved discretion to reduce his bonus for poor performance.   *Drake v. Block*, 247 Iowa 517, 74 N.W.2d 577 (1956) (holding no bonus could be assessed where policies allowing discretion would not allow it to be determined what was due);   *Devore v. Dallas Grp. of Am., Inc.*, No. 98-2119, 1999 WL 1073850, at *2 (Iowa Ct. App. Nov. 23, 1999) (same).

Doc. No. 36-1 at 8-10.

## 2.   *Rasch's Response*

Rasch states:

Under the provisions of §91A.3, Iowa Code, an employee is entitled to all of his wages due to be paid consistent with the regular installment pay days.   Corey Rasch was paid every two weeks, and generally received a check on Thursday for a two week period ending the following Saturday. Corey Rasch consistently received his bonus, and when Corey Rasch asked

his superior, Jack Walker, for an increase in salary, he was told that his bonus at the end of the year was a part of his salary.

Corey Rasch's bonus is considered wages under the Iowa Wage Payment Collection Law, Chapter 91A. *In Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 585 (Iowa 2002), the court stated, "A bonus meets the statutory definition of "wages." *Dallenbach*, 459 N.W.2d at 488. . ." . . . [I]t is undisputed that the plaintiff's employment, including his accrued vacation, would have resulted in the plaintiff being employed through October 10, 2014. The defendant admitted that if the plaintiff had worked for eight days out of the two week period, and was then discharged by the defendant on the eighth day, even if a former employee was not employed when the check was issued for his past wages, he was nevertheless entitled to his past wages due. In this particular case, the plaintiff's efforts in fiscal 2014, through September 30, 2014, resulted in the purchase of 147,901 head of hogs, which resulted in a net profitability to the defendant . . . in the sum $2,828,542.00.

Doc. No. 41-1 at 8-10. Rasch concludes by citing *Dallenbach v. MAPCO Gas Prod.*, Inc., 459 N.W.2d 483, 487 (Iowa 1990), for the proposition that if a bonus is a part of an employee's wages it is owed under Iowa Code § 91A.2.

### 3. *Tyson's Reply*

In its reply, Tyson makes four primary points. First, that a discretionary bonus is not due to a terminated employee, citing *Drake v. Block*, 74 N.W.2d 577 (1956) and *Chambers v. The Travelers Companies, Inc.*, 764 F. Supp. 2d 1071, 1087-88 (D. Minn. 2011), *aff'd sub nom. Chambers v. Travelers Companies, Inc.*, 668 F.3d 559 (8th Cir. 2012). Second, that although Rasch was paid a bonus per the terms of his employment, Tyson retained the right to adjust Rasch's bonus based on his performance and that as a matter of fact Tyson was dissatisfied with Rasch. Third, that the bulk of Rasch's resistance focuses on irrelevant issues, such as whether he was discharge for good cause and whether other employees were engaging in the same misconduct. Finally, Tyson

argues that under Iowa law, employers are permitted to maintain a policy that bonuses do not become payable to discharged employees and Tyson had such a policy. *See Phipps v. IASD Health Serv. Corp.*, 558 N.W.2d 198 (Iowa 1997).[7]

### 4. Rasch's Motion for Partial Summary Judgment

Rasch makes that opposite motion, that he is entitled to summary judgment on his breach of contract claim. Doc. No. 37-1. However, Rasch's motion is conclusory and does not address Tyson's factual assertions. Rasch's motion is primarily a recitation of the facts he believes weigh in favor of his claim.[8]

### 5. Analysis

Rasch makes his breach of contract claim pursuant to Iowa Code chapter 91A.

> The purpose of the Iowa Wage Payment Collection Law is to facilitate the collection of wages owed to employees. *Williams v. Davenport Communications Ltd. Partnership*, 438 N.W.2d 855, 857 (Iowa App.1989); *see Davis v. Ottumwa Young Men's Christian Ass'n*, 438 N.W.2d 10, 12 (Iowa 1989). An employer must pay all wages due its employees. Iowa Code § 91A.3(1). . . If an employer fails to pay an employee wages, the employer is subject to liability for unpaid wages or expenses, court costs, and attorney fees. Iowa Code § 91A.8; *Dallenbach v. MAPCO Gas Prods., Inc.*, 459 N.W.2d 483, 489 (Iowa 1990). If the

---

[7] Tyson also makes an argument regarding the issue of when Rasch was discharged. Because I have found that it is undisputed that Rasch's employment was terminated in September 2014, I need not address this issue. Tyson also rebuts Rasch's argument that his accrued vacation extended his "employment" into October 2014. Again, no facts in the record would support that theory and Rasch has cited no authority that would artificially extend the term of his employment past the date he was actually discharged. Nor does Rasch allege that Tyson failed to pay accrued vacation after his employment was terminated such that Rasch would have a claim against Tyson under chapter 91A. *See* Doc. No. 26.

[8] I need not summarize Tyson's resistance (Doc. No. 40) because, understandably, it largely repeats the points that it made in its own motion for summary judgment.

employer's conduct is intentional, liquidated damages are also recoverable. Iowa Code § 91A.8; *Dallenbach*, 459 N.W.2d at 489.

*Phipps*, 558 N.W.2d at 201–02. Rasch argues that Tyson's bonus plan amounts to "wages" under chapter 91A and, as such, that he should have been paid the accrued portion of his bonus upon his discharge. The Iowa courts have long held that a bonus is wages for under chapter 91A if the employer is contractually obligated to pay the bonus. *Dallenbach*, 459 N.W.2d at 488. However, an indefinite bonus (a gift bonus) is not wages under chapter 91A. *Devore*, No. 1999 WL 1073850, at *2.

In this case, there is no doubt that Tyson's bonus plan amounted to wages under Iowa law. However, the mere fact that a bonus constitutes wages is not the end of the inquiry. In *Phipps*, the Iowa Supreme Court found that an employer's "gainsharing" program (an annual bonus program by another name) amounted to wages under Iowa law. *See Phipps*, 558 N.W.2d at 202 ("It is clear that Blue Cross's gainsharing meets the broad definition of 'wages.' Blue Cross concedes that gainsharing is considered part of its employees' compensation."). However, the plaintiff in *Phipps* was on probation at the time of his discharge and, per the employer's policy, employees on probation were not eligible for gainsharing. The Court stated:

> Even though gainsharing is a "wage," Phipps still has no claim for nonpayment under chapter 91A. Under Iowa Code section 91A.2(7), Blue Cross did not "owe" Phipps the gainsharing payment because he was on probation on December 31, 1993, a violation of one of Blue Cross's established criteria.

*Id*. Accordingly, the Court affirmed the dismissal of the chapter 91A claim.

There is one glaring distinction between this case and *Phipps*. In *Phipps*, the plaintiff worked for an employer that had a clear written policy regarding when employees were eligible (and not eligible) for bonuses. Accordingly, it was easy for the court to identify the policy and find that the plaintiff was not eligible for the bonus. In

this case, for some reason, there appears to be no clear written policy regarding the bonus program. Indeed, even the internal emails attached to the statement of facts show some confusion among Tyson supervisors about when bonuses must be paid. *See* Doc. No. 36-9. Accordingly, there could be some room for Rasch to create a genuine issue of fact regarding the contours of Tyson's policy.

Rasch, however, has failed to do so. There are no facts in the record disputing Tysons' contentions (1) that it could reduce bonuses for performance issues (similar to the probation clause in *Phipps*) and (2) Tyson was not required to pay bonuses to hog buyers discharged during the course of the year. During his deposition, Rasch was repeatedly asked about Tyson's bonus program and agreed that he did not negotiate it, he accepted whatever Tyson's policy was and he had no reason to believe that there had ever been deviation from the policy. Rasch did not offer a declaration describing his understanding of Tyson's policy. At most, he proffered a hope that he would be entitled to his 2014 bonus. Hope alone is not enough to survive summary dismissal. The undisputed evidence is that Tyson's policy included two relevant prongs: (1) Tyson could reduce bonuses for performance issues and (2) bonuses were not paid to employees who were discharged before the end of the fiscal year. Rasch was clearly aware of the first prong, having previously had his bonus docked for performance issues in 2012. Accordingly, the undisputed record is that Tyson was entitled to withhold a bonus due to Rasch's 2014 performance issues.

As for the second prong, this case is akin to *Johnson v. Dollar General*, 880 F. Supp. 2d 967 (N.D. Iowa 2012), in which this court granted summary judgment on a chapter 91A claim when a company paid quarterly bonuses to employees who worked through a certain date, and the claimant left prior to that date. *Id*. at 1001-03. Based on the undisputed terms of Tyson's bonus policy, Tyson was within its rights to withhold a bonus payment to Rasch because Rasch was discharged during the fiscal year.

Because Rasch has failed to produce evidence generating a genuine issue of material fact, Tyson is entitled to summary judgment on his breach of contract and Iowa Code chapter 91A claim. Tyson's motion for summary judgment will be granted on that claim and Rasch's motion for summary judgment will be denied.

### B.    *Rasch's Unjust Enrichment Claim Against Tyson*

### 1.    *Tyson's Motion for Summary Judgment*

In arguing that Rasch's unjust enrichment claim should be summarily dismissed, Tyson states:

> Recovery based on unjust enrichment can be distilled into three basic elements: (1) defendant was enriched by receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances. *State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154-55 (Iowa 2001). Further, where there is a contract or agreement between the parties, unjust enrichment cannot override its terms. *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990). Here, no defendant was enriched, Rasch was not deprived of anything he had any right to expect, and, after Rasch benefited from a larger bonus pool due to employees leaving in the past, it is hardly unjust to expect him to live by the same policy when he subsequently got terminated for theft.

Doc. No. 36-2 at 10.[9]    Tyson goes onto assert that it was not unjustly enriched because the bonus funds were distributed to all hog-buyers, with no portion retained by Tyson. Doc. No. 36-2 at 11.    Tyson also argues that under the terms of its bonus agreement, bonuses are not paid to employees who are discharged during the bonus period.    Tyson contends that if an employer complies with its own policy or agreement, no unjust

---

[9] Tyson makes an identical argument in the context of the defendants' motion for summary judgment filed in the second case (C16-3102, Doc. No. 15-1). Because the arguments are identical as to Tyson, I will refer only to the arguments made in the first case (Doc. No. 36). However, the arguments regarding the non-Tyson defendants are relevant to, and thus asserted in, only the second case. Those arguments will be discussed separately below.

enrichment can occur.  *See Smith v. Stowell*, 125 N.W.2d 795, 800 (1964), *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003) and *Slade v. M.L.E. Inv. Co.*, 566 N.W.2d 503, 506 (Iowa 1997).  Tyson asserts that the bonus plan amounted to a contract and Rasch is bound by its terms.  Doc. No. 36-2 at 13. Finally, Tyson makes an equitable argument that because Rasch previously benefited from this arrangement, he is not entitled to allege that it is unjust.

### 2.    *Rasch's Resistance*

Rasch asserts that he is entitled to $31,821.00 in unpaid bonuses because he purchased 147,901 hogs for Tyson in 2014, thereby allegedly enriching Tyson by a total amount of $2,828,542.00.  Rasch states:  "Tyson's decision to gift Corey's bonus to other undeserving employees who did neither the work nor generated the profitability as a result of the purchase of . . . hogs in Fiscal 2014 does not negate the minimum enrichment that Tyson benefited in the form of the unpaid bonus to Corey Rasch." Doc. No. 41-1 at 12.   In support, Rasch cites *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001), which sets forth the general principles of unjust enrichment under Iowa law.

### 3.    *Tyson's Reply to Rasch's Resistance*

Citing cases from a number of jurisdictions, Tyson argues that when employers comply with the terms of an employment contract, that compliance defeats a plaintiff's equitable claim for unjust enrichment.  *See e.g., McCabe v. Abbott Labs., Inc.*, 47 F. Supp. 3d 339, 348-49 (E.D.N.C. 2014).   Tyson argues that Rasch cannot claim Tyson was unjustly enriched by Rasch's services when Rasch was paid a contractual salary for those services.   Finally, Tyson points out again that it did not keep the bonus money it withheld from Rasch but, instead, paid it to other hog-buyers.

#### 4. *Rasch's Motion for Summary Judgment on his Unjust Enrichment Claim against Tyson*

Again, Rasch makes the opposite motion, asserting that he is entitled to summary judgment on his claim that Tyson was unjustly enriched by his termination. Doc. No. 37-1. Again, his motion is conclusory and does not address Tyson's factual assertions. Instead, Rasch simply recites the facts he believes weighs in favor of this claim.[10]

#### 5. *Analysis*

For two reasons, Rasch's unjust enrichment claim cannot survive summary judgment. First, it is undisputed that Rasch had an employment contract with Tyson. Indeed, I have already found that Tyson acted in compliance with the terms of that contract when it did not pay Rasch a 2014 bonus. Under Iowa law, "the existence of a contract precludes the application of the doctrine of unjust enrichment." *Johnson*, 451 N.W.2d at 175 (citing *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982) and 66 Am.Jur.2d *Restitution and Implied Contracts*, § 6 at 949 (1973)); *see also Bass v. J.C. Penney Co.*, 880 N.W.2d 751, 764 (Iowa 2016) ("Because there is a contract between the consumer and J.C. Penney for the sale of goods, the claim for unjust enrichment fails as a matter of law."). Moreover, an unjust enrichment claim can only survive if it appeals to an "underlying sense of justice." *Iowa Waste Sys., Inc. v. Buchanan Cty.*, 617 N.W.2d 23, 31 (Iowa Ct. App. 2000). No larger sense of justice is implicated when an employer withholds a bonus payment in compliance with its own policy or agreement.[11]

---

[10] Again, I need not summarize Tyson's resistance (Doc. No. 40) because it largely repeats points that it made in its motion for summary judgment.

[11] The only Iowa case that may suggest the viability of an unjust enrichment claim despite the existence of a contract is *Glass v. Minnesota Protective Life Ins. Co.*, 314 N.W.2d 393, 396–97 (Iowa 1982). In that case, the Iowa Supreme Court allowed an unjust enrichment claim to

Courts from other jurisdictions have similarly concluded that the existence of an employment contract precludes recovery under quasi-contract theories, such as unjust enrichment. *See, e.g., Friedman v. Farmer*, 788 F.3d 862, 866 (8th Cir. 2015) (there can be no unjust enrichment in contract cases); *Mooney v. Federated Mut. Ins. Co.*, No. 8:04CV226, 2005 WL 2044917, at *3 (D. Neb. Aug. 25, 2005) (unjust enrichment claims can only proceed in the absence of a contract): *Griep v. Yamaha Motor Corp. U.S.A.*, 120 F. Supp. 2d 1196, 1200 (D. Minn. 2000). Because the parties agree that Rasch and Tyson had a contract of employment, Rasch is precluded as a matter of law from asserting a claim for unjust enrichment.

Second, even if such a claim was otherwise available, Rasch has failed to show that a genuine issue of material fact exists with regard to any of the elements that claim. Recovery based on unjust enrichment requires three elements: (1) the defendant was enriched by receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances. *See Unisys Corp.*, 637 N.W.2d at 154-55. Rasch has failed to create a genuine issue of fact that Tyson was enriched by its refusal to pay him a bonus for 2014. It is undisputed that all bonus money was set aside for hog buyers and was then split among those buyers who were eligible to receive a bonus. Tyson retained none of the bonus money for itself and, therefore, did not receive a benefit by refusing to pay a bonus to Rasch in 2014.[12] Because Tyson did not receive a benefit, it follows that Rasch is unable to

---

proceed at the pleadings stage but left open the possibility that the claim would not survive summary judgement, stating, "[w]hether plaintiff has evidence to support his claim is a separate issue." *Id*. In any event, the Court has reiterated the principle that the existence of a contract precludes an unjust enrichment claim in subsequent cases. *See, e.g., Johnson* and *Bass, supra.*

[12] In some of his filings, Rasch suggests an alternate argument that Tyson was enriched because of his normal work, buying hogs. However, Rasch points to no case law that would allow an unjust enrichment claim for an employee simply because the employer may have profited off the employee's work. Even though "unjust enrichment is a broad principle with few limitations" it

establish the second element (the enrichment was at his expense) and the third element (it is unjust to allow Tyson to retain the benefit). Rasch's unjust enrichment claim fails as a matter of law due to his inability to satisfy the elements of that claim.

Because there is no genuine issue of fact, Tyson is entitled to summary judgment on Rasch's unjust enrichment claim and Rasch's motion for summary judgment must be denied.

### C. *Rasch's Unjust Enrichment Claim Against Non-Tyson Defendants*

#### 1. *Defendants' Motion for Summary Judgment*

The non-Tyson defendants largely adopt Tyson's argument that Rasch is not entitled to assert an unjust enrichment claim because he was paid pursuant to an employment contract and unjust enrichment is not available in this situation under Iowa law. Additionally, they raise arguments arising out of Judge Williams' futility finding. Judge Williams wrote as follows in addressing Rasch's motion to amend:

> "To recover for unjust enrichment [under Iowa law], [the plaintiff] must show: '(1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.'" *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012). . . The Iowa Supreme Court has explained that "unjust enrichment is a broad principle with few limitations." *State, Dep't of Human Servs. ex rel. Palmer*, 637 N.W.2d at 155. The benefit in question need not "be conferred directly by the plaintiff," because "[t]he critical inquiry is that the benefit received be at the expense of the plaintiff." *Id*.
>
> Plaintiff asserts in his proposed unjust enrichment claim that Tyson, and named Tyson employees Jack Walker and Todd Neff, and "other unnamed employees of Tyson . . . financially benefited from the plaintiff's

---

cannot be so broad as to allow every employee to sue their employer with an argument that the employer is being enriched by the employees' work. *Unisys Corp.*, 637 N.W.2d at 155.

efforts in 2013 and 2014, without appropriate compensation to the plaintiff." Doc. 22-1, at ¶5. Plaintiff continues to assert in conclusory fashion that "plaintiff by his actions benefited the defendants who were knowingly enriched by plaintiff's efforts without full and reasonable compensation to the plaintiff." Doc. 22-1, at ¶13. Plaintiff further asserts that defendants "Jack Walker, Todd Neff, and other unnamed employees of Tyson . . . were knowingly enriched and financially benefited from plaintiff's efforts and from the purchases made by the plaintiff for Tyson . . . and further benefited from increased company profitability from not compensating plaintiff for his efforts . . . ." Doc. 22-1, ¶18. Plaintiff's Second Amended Complaint repeats these conclusory assertions in other paragraphs. Doc. 22-1, ¶¶ 19-21.

[Rasch] fails to explain how the named and unnamed employees financially benefited from Tyson's alleged failure to pay plaintiff the bonuses to which he claims he was entitled. There are no allegations of fact in the proposed Count II which link the denial of plaintiff's bonuses to financial gain to the named and unnamed employees. Plaintiff alleges no facts which make the critical showing that these named and unnamed employees received a benefit at the expense of the plaintiff. *State, Dep't of Human Serv. ex rel. Palmer*, 637 N.W.2d at 155. Indeed, the proposed Count II does not even allege that these employees received a benefit at plaintiff's expense; just that they benefited from increased profitability of the company without any explanation of how that occurred.

Moreover, plaintiff's mere conclusory assertions that these employees received a benefit is insufficient. Although in deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant, *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986), it need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Doc. No. 25 at 7-9. Judge Williams thus found that Rasch's claim against the non-Tyson defendants was futile. Those defendants now argue:

Rasch's claims against Neff and Walker also are beyond meritless. Indeed, Rasch lacks any evidence that either Walker or Neff received anything extra because he was not entitled to a bonus. Rasch admitted having no evidence as to Neff - yet sued him anyway. . . With regard to Walker, Rasch admitted having nothing more than speculation. . . "[S]peculation does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tele. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) (internal citations omitted); *see Frieze v. Boatmen's Bank*, 950 F.2d 538, 541 (8th Cir. 1991).

In fact, all potential bonus funds for hog buyers go into one pool. If a hog buyer quits or is fired from Tyson, all accrued bonus funds remain in the bonus pool to be reallocated among other hog buyers. Barber Dep. at 17 (App. 31). As noted above, Rasch benefited from this practice in the past when other hog buyers departed in any way other than death, disability or retirement. Barber Decl. at T 5 (App. 13). Because Neff and Walker are not hog buyers, they do not participate in the bonus pool in the same way. Barber Dep.'at 41-42 (App. 32-33); Neff Dep. at 10 (App. 30). Neff does not share in the hog buyer bonus pool at all and Walker is paid a portion of the bonus pool prior to allocating the bonus pool to the hog buyers. Barber Dep. at 41 (App. 32); Neff Dep. at 10 (App. 30); Barber Decl. at ¶6 (App. 13). Thus, the departure of a hog buyer, like Rasch, does not change Neff's or Walker's bonus. Barber Decl. at fl 7 (App. 13). Using round numbers for illustrative purposes only, if the total bonus pool were $100,000 and Walker were eligible for 1% of that, he would get $1,000 regardless of whether the remainder of the pool is divided among two, ten, or fifteen hog buyers. In short, not only does Rasch have no evidence Neff or Walker received more because he was terminated for theft, they did not. *Hess v' Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (holding co-workers who did not receive bonus could not be liable for unjust enrichment).

C16-3102, Doc. No. 15-2 at 14-16.

### 2. Rasch's Resistance

Rasch's resistance (Doc. No. C16-3102, Doc. No. 16-1) seemingly mirrors the resistance filed in C16-3006. Rasch does not add any arguments specifically addressing his claim of unjust enrichment against the non-Tyson defendants.

### 3. Defendants' Reply

Defendant's reply is aptly summarized in its introductory paragraph:

> On January 31, 2017, Defendants Tyson Fresh Meats ("Tyson"), Jack Walker and Todd Neff sought summary judgment in the above-captioned litigation. On February 21, 2017, Plaintiff Corey Rasch resisted-but fails even to address Neff and Walker. Because Rasch fails to overcome his claims' failings, Defendants' motion should be granted.

C16-3102, Doc. No. 19 at 2.

### 4. Analysis

The non-Tyson defendants are entitled to summary judgment. I agree with Judge Williams that the claims against Walker and Neff could not survive a Rule 12(b)(6) motion to dismiss. Rasch's state court petition (C16-3102, Doc. No. 2-1) sets forth nothing but conclusory allegations about Walker and Neff being unjustly enriched with no explanation of how. Rasch's claim is even more deficient when viewed in light of the standards that apply to motions for summary judgment. As set out in the defendants' brief, Rasch alleges no facts that Neff and Walker were paid more or otherwise received a benefit because Rasch did not receive a bonus. Rasch admitted he had no idea what Neff was paid and based his claim against Walker on vague office gossip.

By contrast, defendants have produced evidence demonstrating that the bonus pool was distributed among hog buyers and, because Neff and Walker were not hog buyers,

their pay was not affected by Rasch's discharge and resulting lack of a bonus payment. Even viewing the record most favorably to Rasch, he has failed (rather spectacularly) to produce evidence supporting his allegation that Neff and Walker were somehow enriched by his discharge. Accordingly, defendants' motion for summary judgment (C16-3102, Doc. No. 15) will be granted with regard to the non-Tyson defendants.

## VIII. CONCLUSION

For the reasons set forth herein:

1.     Defendants' motion to consolidate (Case No. C16-3102, Doc. No. 5) is **granted**. Case Numbers C16-3006 and C16-3102 are hereby **consolidated** and shall proceed together under Case Number C16-3006. All further filings will take place on that docket.

2.     Plaintiff's renewed motion to remand (Case No. 16-3006, Doc. No. 54) is **denied**.

3.     Defendants' motion to dismiss (Case No. C16-3102, Doc. No. 5) is **denied**.

4.     Plaintiff's motion for summary judgment (Case No. C16-3006, Doc. No. 37) is **denied**.

5.     Defendants' motions for summary judgment (Case No. C16-3006, Doc. No. 36, Case No. C16-3102, Doc. No. 15) are **granted in their entirety**. All of the plaintiff's claims in Case No. C16-3006 and Case No. C16-3102 are **dismissed with prejudice**. The Clerk shall enter judgment against plaintiff in both cases.

6.     The trial scheduled to begin **May 31, 2017**, is **canceled**.

7.     Defendant Tyson's motion in limine (Case No. C16-3006, Doc. No. 48) is **denied as moot**.

8.      Because this order disposes of all pending claims, both of these cases are **closed**.

**IT IS SO ORDERED.**

**DATED** this 19th day of May, 2017.

_____
Leonard T. Strand, Chief Judge